Filed 10/13/25  P. v. Lacy CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F088782 |
| Plaintiff and Respondent, | (Super. Ct. No. F16904373) |
| v. | |
| ERIC TYRONE LACY, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen, Kari R. Mueller, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Franson, Acting P. J., Snauffer, J. and Ellison, J.†

†      Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant Eric Tyrone Lacy pled no contest to charges of assaulting and injuring his wife and resisting a peace officer, and he was sentenced to a term of 18 years. Defendant appealed, and our court remanded the matter for resentencing. (*People v. Lacy* (Mar. 20, 2020, F077146) [nonpub. opn.] (*Lacy I*).) Defendant was resentenced, and he again appealed. Our court remanded the matter "for resentencing consistent with [the] opinion and in compliance with [Penal Code[1]] section 1170 as amended by Senate Bill No. 567 [(2021–2022 Reg. Sess.)]." (*People v. Lacy* (Aug. 30, 2022, F082128) [nonpub. opn.] (*Lacy II*).) Defendant was resentenced again. The trial court imposed an aggerate term of 17 years, which included an upper term sentence, and defendant again appealed.

In this appeal, defendant argues that the trial court erred by imposing an upper term sentence because it relied on unproven aggravating factors. We agree. Accordingly, we vacate defendant's sentence and remand for a full resentencing.

## PROCEDURAL HISTORY

On January 3, 2018, defendant pled no contest to willfully inflicting corporal injury to his spouse, resulting in a traumatic condition (§ 273.5, subd. (a); count 1), as well as a misdemeanor charge of resisting a peace officer (§ 148, subd. (a)(1); count 2). As to count 1, he admitted that he inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). He also admitted that he had two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), one prior serious felony conviction (§ 667, subd. (a)(1)), and that he had suffered a prison prior (§ 667.5, former subd. (b)). His plea was "straight-up" (without a plea agreement).

On March 9, 2018, the trial court sentenced defendant. It struck one of defendant's prior strike conviction allegations, as well as the prison prior allegation, and sentenced defendant to an aggregate term of 18 years.

---

**1**    Undesignated statutory references are to the Penal Code.

Defendant appealed. On March 20, 2020, we remanded the matter for resentencing but otherwise affirmed the judgment. (*Lacy I*, *supra*, F077146.)

On October 15, 2020, defendant was resentenced. The trial court reimposed the original sentence, and defendant again appealed. On August 30, 2022, our court remanded the matter "for resentencing consistent with [the] opinion and in compliance with section 1170 as amended by Senate Bill No. 567 [(2021–2022 Reg. Sess.)]," but otherwise affirmed the judgment. (*Lacy II*, *supra*, F082128.)

On September 26, 2024, the trial court again resentenced defendant. The court imposed an aggregate term of 17 years, which included an upper term sentence on count 1.

On October 11, 2024, defendant timely filed a notice of appeal.

## SECOND RESENTENCING HEARING[2]

On August 21, 2023, the prosecutor filed a sentencing memorandum. The prosecutor argued, among other things, that the trial court should impose the upper term on count 1 based on the following aggravating factors: (1) "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2));[3] (2) "defendant has served a prior term in prison or county jail under section 1170[, subdivision ](h)" (rule 4.421(b)(3)); and (3) "defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory" (rule 4.421(b)(5)). The prosecutor further argued that, pursuant to section 1170, subdivision (b)(3), these aggravating factors could be proved by certified records without a trial.

---

[2] We do not include a summary of the facts underlying the offenses because the only issue on remand was resentencing.

[3] Undesignated rules references are to the California Rules of Court.

Defendant also filed a sentencing memorandum. Defendant argued, among other things, that the trial court should impose the middle term because no aggravating factors had been proved in compliance with section 1170, subdivision (b).

The resentencing hearing was held on September 24 and 26, 2024. The prosecutor sought to admit defendant's RAP sheet, two section 969b packets, and three certified case records associated with three of defendant's prior convictions. The prosecutor argued that these records showed defendant's "criminal history, his prior poor performance on parole as well as the fact that he was on parole at the time that he committed this underlying offense, the violation of [section] 273.5." The prosecutor further argued that, pursuant to section 1170, subdivision (b)(3), she could use the certified records "to prove those specific aggravating factors unrelated to the conduct in the case, unrelated to the nature of the victim, but solely related to … defendant's criminal history."

Defendant stipulated to the existence of prior convictions. However, he argued that the prior convictions were not relevant because "they weren't stipulated to by … defendant in terms of aggravating factors nor is there a finding that those will prove beyond a reasonable doubt that there are aggravating factors in this particular situation."

The trial court ruled that section 1170, subdivision (b)(3) allowed it "to consider a defendant's prior convictions in determining sentencing based on certified records of the conviction." Accordingly, the court received the exhibits into evidence.

Subsequently, the prosecutor urged the trial court to impose the upper term "based on the aggravating factors proved through the certified records."

After hearing arguments from the parties, the trial court stated:

> "To be clear, one of the changes that was made in the law was that the [c]ourt could no longer impose the aggravated term absent a finding by the jury or presentation of certified copies of the criminal history. In other words, the [c]ourt can no longer simply rely upon the statements of the criminal history contained in the probation report and on that basis say that there's been a long history or that the, there's been a number of arrests or the status of the person concerning probation and parole and it's for that

4.

reason that it was important that the [c]ourt receive the actual certified records, because now that's what the [c]ourt must rely upon in order to impose an aggravated term if the [c]ourt were … inclined to do so."

Ultimately, the trial court imposed an aggregate term of 17 years, consisting of: on count 1, eight years (the upper term, doubled due to a prior strike conviction), plus four years (the middle term) for the great bodily injury enhancement (§ 12022.7, subd. (e)) and five years for the prior serious felony conviction allegation (§ 667, subd. (a)(1)).  In selecting the upper term, the trial court stated:  "[T]he [c]ourt is selecting the aggravated term based upon the criminal history which has now been proven by way of certified copies.  And the [c]ourt is satisfied that based upon that conduct that [defendant]—that that [*sic*] is an aggravating factor, his criminal history."[4]

## DISCUSSION

### I.    Section 1170

On January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) went into effect, amending section 1170.  Section 1170 now authorizes a trial court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  However, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)

While not directly addressing section 1170, in *Erlinger v. United States* (2024) 602 U.S. 821, the United States Supreme Court held that, under the Fifth and Sixth Amendments, "[v]irtually 'any fact' that ' "increase[s] the prescribed range of

---

[4]      We note that imposition of the middle term on count 1 instead of the upper term would reduce the aggregate sentence from 17 years to 15 years.  (See § 273.5, subd. (a).)

penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Id*. at pp. 834–835.) An exception to this allows a trial court to "find *only* 'the fact of a prior conviction.' [Citation.] Under that exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id*. at p. 838, italics added.)

In *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), our Supreme Court addressed section 1170, subdivision (b)(3)'s prior conviction exception in light of the holding in *Erlinger*. "To avoid any application that would set section 1170[, subdivision ](b)(3) at odds with the high court's constitutional interpretation, [the court] interpret[ed] section 1170[, subdivision ](b)(3)'s procedure in a manner that is coextensive with high court dictates." (*Id*. at p. 1086.) Thus, in accordance with *Erlinger*, the court held that "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Ibid*., fn. omitted.) The court also addressed two specific aggravating factors, the increasing seriousness of a defendant's prior convictions (rule 4.421(b)(2)) and a defendant's unsatisfactory performance on probation or parole (rule 4.421(b)(5)), and held that each must be found true by a jury before it can be used to justify an upper term sentence. (*Wiley*, at pp. 1082–1085.)

## II. Standard of Review

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman*[5] standard of review. [Citations.] Under that standard, 'a sentence imposed under … section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same

---

[5] *Chapman v. California* (1967) 386 U.S. 18.

6.

standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Wiley*, *supra*, 17 Cal.5th at p. 1087.)

### III. The Trial Court Erred by Relying on Aggravating Factors Not Proved in Compliance with Section 1170, Subdivision (b)

Defendant points out that the trial court imposed the upper term based on his " 'criminal history.' " He argues that he "did not admit, nor did a jury find, that [his] prior convictions were numerous or of increasing seriousness, that he had served a prior term in prison, that he was on parole when the crime was committed or that his prior performance on parole was unsatisfactory." He further argues that while it is unclear exactly which of these aggravating factors the court relied on, it impliedly relied on one or more of these factors, all of which require a jury trial. Accordingly, he argues that by relying on these factors, the court violated his right to a jury trial.

In response, the People concede that a jury trial is required for any of the following aggravating factors to be used to justify an upper term sentence: "(1) the defendant's prior convictions were numerous or of increasing seriousness, (2) the defendant's prior performance on supervised release was unsatisfactory, (3) the defendant served a prior prison term, and (4) the defendant committed the offense while on supervised release."[6] However, the People argue that the trial court did not rely on any of these aggravating factors. Instead, according to the People, "there is no indication the … court relied on any aggravating factor beyond the simple fact that [defendant] had been convicted of the crimes shown by the certified record of conviction."

To begin, the People's concession is well taken. In light of *Erlinger*, "any fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher

---

[6] This concession is based in part on *Wiley*, which was decided after the second resentencing hearing.

punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial." (*Wiley*, *supra*, 17 Cal.5th at p. 1084.) As determining whether prior convictions are numerous or of increasing seriousness, whether a defendant served a prior term in prison, whether the defendant was on parole when the crime was committed, or whether a defendant's performance on parole was unsatisfactory all require a finding beyond the bare fact of a prior conviction and its elements, each factor must be found true by a jury beyond a reasonable doubt (absent a waiver or stipulation). This is so even if the inquiry into that aggravating factor would be straightforward. (*Ibid*. ["This jury trial guarantee retains its vitality even if the inquiry is ' " 'straightforward.' " ' "].)

Therefore, as there was no jury finding, waiver, or stipulation, if the trial court relied on any of the aggravating factors that the prosecutor urged it to apply, the court erred. And based on our review of the record, it did.

As summarized above, the prosecutor urged the trial court to impose the upper term based on the aggravating factors in the paragraphs above, both in her sentencing memorandum and at the sentencing hearing.[7] And, the court appears to have agreed with the prosecutor, noting that while it used to be able to rely on the "criminal history" listed in a probation report to find that a defendant had a "long history or that … there's been a number of arrests or the status of the person concerning probation and parole," certified records were now required to make those findings. Moreover, no one argued that the court should rely solely on the fact of each conviction shown by the

---

[7]     The sentencing memorandum did not list that "defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed" (rule 4.421(b)(4)) as an aggravating factor. However, at the hearing, the prosecutor argued that this aggravating factor applied.

certified records, and there is nothing in the record to suggest that it did.[8]  Instead, it relied on defendant's "criminal history."

Accordingly, we conclude that the trial court relied on facts beyond the bare fact of each prior conviction to impose an upper term sentence, as it was urged to do by the prosecutor.  And because there was no jury trial on these facts, a jury trial waiver, or a stipulation to these facts, this was error.

## IV.    The Error Was Not Harmless

The People argue that even if the trial court erred, any error was harmless because, "[a]ssuming that the trial court imposed the upper term based on finding that … defendant's prior convictions were numerous or of increasing seriousness, … defendant's prior performance on supervised release was unsatisfactory, … defendant served a prior prison term, and … defendant committed the offense while on supervised release, any rational jury would have found all of these factors true beyond a reasonable doubt."  We disagree.

As discussed above, one of the factors that the prosecutor urged the trial court to apply was that defendant's prior performance on parole was unsatisfactory, and it appears the court adopted the prosecutor's position.  In *Wiley*, our Supreme Court addressed whether erroneously relying on this factor was harmless.  (*Wiley*, *supra*, 17 Cal.5th at p. 1090.)  In that case, there was evidence of the defendant's performance on probation in three cases.  (*Ibid*.)  In one, he "successfully completed a residential drug treatment

---

[8]    We note that the minute order issued after the sentencing hearing states that the trial court imposed the upper term based on the aggravating factor that defendant's "prior adult convictions are numerous."  The People do not rely on the minute order to argue that the court did not err or that any error was harmless, and this implicit concession is well taken.  When a discrepancy exists between a trial court's oral pronouncement and the minute order, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Price* (2004) 120 Cal.App.4th 224, 242.)  And here, nothing in the transcript of the hearing suggests that the court relied solely on the numerosity of defendant's prior convictions to impose the upper term.

program, obtained his driver's license, paid all court ordered fines and fees, and committed no probation violations. In two other cases, [his] performance on probation was 'marked by probation violations due to his arrest and conviction of new misdemeanor and felony law violations.' Probation was revoked and a prison term was executed. After his release from prison on postrelease community supervision, [he] was convicted of a new misdemeanor offense, but 'was fairly compliant during the remainder of his supervision term ….' " (*Id.* at pp. 1090–1091.)

The People in that case argued that " '[b]ecause committing an offense on probation is such a clear violation of both the letter and spirit of probation's strictures, no rational jury could conclude that a defendant who committed crimes two out of the three times that he was on formal probation had performed satisfactor[ily] on probation.' " (*Wiley*, *supra*, 17 Cal.5th at p. 1091.) The court rejected this argument. (*Ibid.*) The court noted that the probation report listed the defendant's performance on probation as both an aggravating and mitigating factor, and so the court "[could not] discount the possibility that either counsel in a contested jury trial might have presented live testimony on this factor that would have affected the jury's determination. [Citation.] Nor [could it] discount the possibility that a rational jury could have disagreed as to whether the People had proved that [the defendant's] *overall performance* on probation was unsatisfactory." (*Ibid.*) Accordingly, the court found that the error was not harmless. (*Ibid.*)

Our case is similar to *Wiley*. The People argue that because defendant violated parole on at least three occasions, "a jury must have found beyond a reasonable doubt that appellant's performance on parole was unsatisfactory by any reasonable standard." Like *Wiley*, we reject this argument, and for the same reason. That is, while the probation report did not list his performance on probation as a mitigating factor, there is evidence that he successfully completed parole on at least one occasion. Accordingly, like the court in *Wiley*, we cannot discount the possibility that defendant may have presented live

10.

testimony on this aggravating factor that would have affected a jury's determination. We also cannot discount the possibility that a rational jury could have disagreed as to whether the prosecutor proved defendant's overall performance on parole was unsatisfactory.

As we cannot conclude beyond a reasonable doubt that a jury would have found this aggravating factor true, the trial court's error was not harmless. (*Wiley*, *supra*, 17 Cal.5th at p. 1087.)[9]

## **DISPOSITION**

The sentence is vacated, and the matter is remanded for a full resentencing consistent with this opinion. The judgment is otherwise affirmed.

---

[9]    We also note that, based on the posture of this case, the aggravating factors that the trial court improperly relied on were not going to be considered by a jury. Both in her sentencing memorandum and at the outset of the sentencing hearing, the prosecutor stated that she was not seeking a jury trial on aggravating factors. This decision occurred before the court ruled on which aggravating factors it could consider. Thus, had the court properly held that it could not consider the aggravating factors, rather than the factors being sent to a jury for consideration, they simply would have been unavailable for the court to rely upon when deciding whether to impose the upper term. Accordingly, based on the procedural posture of this case, it appears reasonably probable defendant would have obtained a more favorable result had the court not erred.